Richard X. WILLIAMS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17186.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 28, 1962.

Decided May 10, 1963.

Petition for Rehearing En Banc
Denied June 28, 1963.

Certiorari Denied Oct. 28, 1963.
See 84 S.Ct. 176.

See also 317 F.2d 569.

Mr. George P. Lemm, Washington, D. C. (appointed by this court), for appellant.

Mr. Tim Murphy, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee. Mr. Paul A. Renné, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, and WILBUR K. MILLER and WASHINGTON, Circuit Judges.

BAZELON, Chief Judge.

Appellant challenges the sufficiency of the evidence upon which he was convicted of robbery, D.C.Code, § 22–2901, and sentenced to imprisonment for a term of two to seven years.

The conviction rests primarily on the testimony of the complaining witness, a Mrs. Allen, who testified as follows: On Thursday, August 24, 1961, at 1:00 p. m., she went to The House of Prayer for All People and remained there until 1:00 a. m., the following morning. Before leaving the church to go home, she checked her pocketbook to see whether she had her "transportation." Finding that she did, she put her billfold back in her pocketbook and started to leave. When she got to the very crowded sidewalk, she felt "something rubbing up against" her but she paid "no attention, because [she] figured that it was people—you know—crowding." She then felt someone

"fumbling" against her, and later felt someone's hand. She caught the hand and "held to it," and then saw her pocketbook swinging open." She accused the person whose hand she had grabbed of stealing her billfold,[1] which he denied. She replied, "Somebody got it. It's gone out of my pocketbook * * *. Well, you got it or somebody got it." The accused then broke away, but was caught "across the street." The billfold, which was never found, contained one dollar and three quarters. A search of the accused turned up no coins.

Defendant testified that he was walking down the street with his arms "at [his] sides" when the complaining witness suddenly and without apparent reason "grabbed" him. He denied "bumping," "jostling," or having any physical contact with her prior to being grabbed; and he denied taking her wallet or placing his hand in, on, or near her pocketbook. His version was supported by the testimony of his friend, James C. Archer, Jr.

 Appellant asserts that the evidence of guilt is circumstantial and is equally consistent with a theory of innocence, namely, that Mrs. Allen accidentally dropped the wallet during her exit from the crowded church; or that appellant was guilty only of an attempt to pick her pocketbook,[2] which failed because the wallet had previously been taken by another or dropped. He therefore urges that the trial court erred in refusing to direct a verdict of acquittal. Carter v. United States, 102 U.S.App.D.C. 227, 252 F.2d 608 (1957). We think, however,

that there was sufficient evidence from which the jury, under proper instructions, could have found guilt beyond a reasonable doubt.

Because the character of the evidence in this case sharpened the importance of the instructions, we inquired about them at the oral argument before this court. They were neither challenged in this appeal nor included in the transcript of trial proceedings submitted to this court. Appellant's counsel, who was not his counsel below, stated that he did not know whether the instructions were proper or not since he had never seen them. It appears that this court appointed counsel to assist our indigent appellant in seeking leave of this court to appeal in forma pauperis; and after denying such leave, as well as a request for a transcript at Government expense, the court allowed counsel to pay the filing fee and the cost of a transcript of the testimony and thus pursue an appeal. He did not include the instructions because he believed the testimony revealed sufficient error to require outright reversal. After the oral argument in this court, we took the necessary steps to obtain a transcript of the instructions at Government expense.[3]

The transcript discloses that the trial judge correctly advised the jury that much of the evidence of guilt was circumstantial. But he did not give the traditional instruction on the weight to be accorded circumstantial evidence: that "unless there is substantial evidence of facts which exclude every reasonable hypothesis but that of guilt, the verdict must be not guilty * * *." Carter v.

---

1. Although Mrs. Allen never expressly testified that she *saw* appellant's hand in her pocketbook, she did testify as to her *conclusion* that his hand was in her pocketbook as follows:
 "Q. But you didn't see him take it?
 "A. No, I didn't * * *. I don't know whether he took it out—
 "Q. You don't know whether he took that or not, do you?
 "A. I don't know definitely. But I know he had his hand in my pocketbook."

2. Had appellant requested a charge on the lesser included offense of attempted rob-

bery, its denial would have been reversible error. Young v. United States, U.S.App. D.C., 309 F.2d 662 (1962). But in the context of this case, failure to give the instruction was not plain error under Rule 52(b), Fed.R.Crim.P.

3. On its own motion, this court en banc vacated its order of April 26, 1962, denying leave to appeal in forma pauperis, and granted such leave. See Williams v. United States, 115 U.S.App.D.C. ——, 317 F.2d 569.

United States, 102 U.S.App.D.C. 227, 231, 252 F.2d 608, 612 (1957). Instead he told the jury that "whether the testimony or evidence be direct or circumstantial, or a combination of the two, before you may find a person guilty of a criminal charge, it must add up to proof beyond a reasonable doubt." This instruction follows what the Supreme Court described in Holland v. United States, 348 U.S. 121, 139, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954), as "the better rule * * * that where the jury is properly instructed on the standards for reasonable doubt * * * an additional instruction on circumstantial evidence is confusing and incorrect." This court, however, apparently interpreted the Supreme Court's view as permissive rather than mandatory with the various circuits; for in Carter, decided *after* Holland, we reversed for failure to give the requested traditional circumstantial evidence instruction. But in Hunt v. United States, 115 U.S.App.D.C. ——, 316 F.2d 652, this court seems to have adopted the Holland rule.

 In any event, appellant did not request any further instruction, and we do not deem its omission "plain error" in the context of this case. See Macaboy v. United States, 82 U.S.App.D.C. 53, 160 F.2d 279 (1947).

There is another issue concerning the trial judge's instruction on circumstantial evidence which merits discussion. The Government's case rested on disputed testimony of circumstances from which the jury was asked to infer guilt. Thus, the jury first had to pass on the issues of credibility and conflict; and only if it believed the testimony of guilty circumstances should it have considered whether these circumstances were sufficient to warrant an inference supporting a conclusion of guilt beyond reasonable doubt.

 Instead of alerting the jury about this two step process, the trial judge made certain statements which may have implied that the jury could infer guilt from circumstances without first resolving conflicts in testimony over whether the circumstances occurred.

He told the jury, for example, that "One type [of evidence] is known as direct evidence, testimony of a witness as to what he saw or heard, and the other is known as indirect or circumstantial evidence." This statement may convey the erroneous impression that "circumstantial evidence" never derives from disputed testimony. He then "cite[d] a homely but I believe clear, example of circumstanial evidence * * *. If you see the track of an animal, a rabbit, in the snow, you know a rabbit has been there just as well as if in fact you saw the rabbit." This may again have implied that the circumstantial evidence in the case consisted of undisputed circumstances.

Had defendant objected to these statements and requested a more precise instruction on the nature of testimonial circumstantial evidence and the function of the jury in evaluating it, failure to heed the request would have been reversible error. Although we think these infirmities in the instructions should be avoided, we cannot say that the charge to the jury, considered as a whole, reflects plain error; for, in discussing circumstantial evidence, the judge did say that "indirect evidence is supplied by *testimony* as to facts and circumstances which tend to show that the offense under inquiry has been committed and by whom it was committed." And he did tell the jurors—albeit in an unrelated portion of the instruction—that they are "the sole judges of the credibility of the various witnesses who have taken the stand," and it is their duty "to give the proper weight to the testimony of each and every witness."

The conviction is therefore

Affirmed.

WILBUR K. MILLER, Circuit Judge, concurs in the result.